IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00482-REB-KLM

CALVIN RHODES,

    Plaintiff,

v.

PHYSICIAN HEALTH PARTNERS (PHP), CDOC Medical Care Provider, JAY WANT, MD., Chief Executive Officer of (PHP), and STEPHEN R. KREBS, MD., Medical Director of Case Management,

    Defendant(s).

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on **Defendants' Motion to Dismiss Plaintiff's Complaint** [Docket No. 24; Filed May 28, 2009] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO.L.Civ.R. 72.1.C., the Motion has been referred to this Court. Plaintiff filed a response to the Motion on July 2, 2009 [Docket No. 29] and Defendants filed a reply in support of the Motion on July 15, 2009 [Docket No. 30]. I have reviewed the Motion, the parties' pleadings, the entire case file, and the relevant law and am advised in the premises. For the reasons stated below, I RECOMMEND that the Motion be **GRANTED**.

**I. Background**

    At the time of the filing of the complaint, Plaintiff was an inmate in the custody of the Colorado Department of Corrections ("CDOC") at the Sterling Correctional Facility.

*Complaint* [# 3] at 2.[1]  Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against Physician Health Partners ("PHP"), a medical care provider for the CDOC, Jay Want, M.D., Chief Executive Officer of PHP, and Stephen R. Krebs, M.D., Medical Director of Case Management for PHP.  *Id.*  Plaintiff alleges that he suffers from chronic pain in his right knee.  *Id.* at 3.  He claims that after months of unsuccessful treatment, the CDOC referred Plaintiff to Dr. Shawn Nakamura.  *Id.*  On August 14, 2008, after an examination, Dr. Nakamura recommended that Plaintiff undergo anthroscopic surgery.  *Id.*[2]

On August 29, 2008, Defendant Krebs denied Dr. Nakamura's request for knee surgery, finding that the surgery was not medically necessary, that the surgery could be safely delayed until Plaintiff's release from prison in December 2009, and that the surgery was curative and would only be "partially helpful."  *Id.* at 13.  As a consequence, Plaintiff alleges, he has needlessly suffered and the lack of surgery risked further injury to both of his knees, hips, and lower back.  *Id.* at 3.  Plaintiff alleges that Defendants' actions demonstrate that they were deliberately indifferent to his medical needs, in violation of the Eighth Amendment.  *Id.* at 4.  Plaintiff seeks compensatory and punitive damages in the amount of $500,000.00.  *Id.* at 8.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those

---

[1] Plaintiff was paroled on August 27, 2009. [#33].

[2] Plaintiff has attached and incorporated by reference correspondence and medical records.  Thus, the Court may consider them in evaluating the motion to dismiss.  *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).  Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted).  As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226,

1236 (10th Cir. 1999) (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility' of entitlement to relief." *Ashcroft*, 129 S. Ct. at 1949 (citation omitted).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). For example, the Court may treat a *pro se* litigant's complaint as an affidavit if it alleges facts based on personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111 (citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n.1 (10th Cir. 1985) (citation omitted)). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

#### A. Eighth Amendment

Plaintiff alleges Defendants violated the Eighth Amendment by refusing to authorize his knee surgery. The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend VIII. As such, it requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and [that they] must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Court's analysis of Plaintiffs' Eighth Amendment claim involves both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298-

99 (1991).

As to the objective component, the Court considers whether Plaintiff has been deprived of a sufficiently serious basic human need, i.e., an extreme deprivation. "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' 'only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations omitted). Here, the issue is the medical care that was provided to Plaintiff. "[A] medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recommend the necessity for a doctor's attention.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2001)).

Defendants concede for the purposes of the Motion that Plaintiff's knee condition was a serious medical need. The Court agrees that Plaintiff has shown that he suffered from a serious knee injury. He was diagnosed with a possible meniscus tear and recommended for surgery. Thus, Plaintiff's complaint sufficiently alleges the objective element of his claim.

As to the subjective component, the Court considers whether Defendants intended the deprivation, i.e., acted with deliberate indifference to the harm that could result. Deliberate indifference can only be proved by showing that Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837.

The complaint alleges, and the accompanying exhibits show, that Plaintiff was referred to an orthopedic specialist, Dr. Nakamura by CDOC doctors. After his examination

of Plaintiff, Dr. Nakamura recommended that Plaintiff undergo a knee arthroscopy. Dr. Nakamura informed Plaintiff that the surgery "would help his pain but it will not relieve all of his pain" or stop his arthritis. On August 29, 2008, Defendant Krebs concluded that the surgery was not medically necessary, that the surgery was curative and that it would only be partially helpful. He also concluded that the surgery could be safely delayed until Plaintiff's release in December 2009.

An inmate's difference of opinion concerning the medical treatment he received does not generally support a claim for cruel and unusual punishment. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). To the extent that Plaintiff, in his opinion, is asserting that Defendants did not satisfactorily perform their medical duties, "such a difference of opinion amounts to a medical malpractice claim . . . [which] cannot be the basis for a federal § 1983 action. . . . [A] medical malpractice claim does not become a constitutional violation simply because the plaintiff is a prisoner." *Pearson v. Simmons*, No. Civ.A. 95-3006-GTV, 1998 WL 154552, at *2 (D. Kan. Mar. 17, 1998) (unpublished decision) (citations omitted) (noting that inmate's allegation that defendants were deliberately indifferent to his knee injury based upon a disagreement about the level of care he received for that injury did not state an Eighth Amendment claim). As was the case in *Pearson*, "Plaintiff was not denied medical treatment, rather he merely disagrees with defendant's medical judgment." *See id.* There is no deliberate indifference when one doctor recommends surgery and another does not. *McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *see also Benning v. Webster*, 2009 WL 798861, at *6 (D. Colo. Mar. 24, 2009)(conflicting opinions of doctors on need for surgery is a question of medical judgment not cruel and unusual punishment).

To the extent that Plaintiff also raises an issue related to the delay in receiving

6

medical treatment, the Tenth Circuit has held that "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition" may "constitute deliberate indifference in a prison medical case." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2008)). However, "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210. Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

Plaintiff alleges that because he was denied the surgery, he "is left to needlessly suffer" and runs the risk of "further injury to both of his knees, hips and ... lower back due to his condition." Complaint at 3. As an initial matter, the Court notes that both medical doctors who considered Plaintiff's knee problem concluded that the surgery would not relieve him of all his pain and would not affect his arthritis. Morever, Plaintiff's claim that he *may* suffer further injury is not sufficient to demonstrate that he suffered substantial harm as the result of the decision to delay his surgery. "[N]ot every twinge of pain suffered as the result of delay in medical care is actionable." *Sealock,* 218 F.3d at 1210. Plaintiff's claim of harm is conclusory and speculative. Therefore, Plaintiff has failed to allege a viable Eighth Amendment claim.

**B. Private Corporation Liability**

Even if Plaintiff had sufficiently alleged an Eighth Amendment claim, Defendant PHP

asserts that it should be dismissed. PHP contends that Plaintiff has not identified any PHP custom or policy that violated the Eighth Amendment. *Motion* [#24] at 2. The established principles of municipal liability have been found to apply to §1983 claims brought against private corporations like Defendant PHP. *See, e.g., Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (finding that "[a]lthough the Supreme Court's interpretation of § 1983 in *Monell* applied to municipal governments and not to private entities acting under color of state law, case law from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants."). Therefore, according to the principles of municipal liability, a private actor such as PHP "cannot be held liable *solely* because it employs a tortfeasor - or, in other words . . . cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). In order to be held liable for the allegedly tortious acts of its agents, Plaintiff must show that PHP directly caused the constitutional violation by instituting an "official municipal policy of some nature," that was the "direct cause" or "moving force" behind the constitutional violations. *Smedley v. Corr. Corp. of Am.*, 175 Fed. Appx. 943, 944 (10th Cir. 2005) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-85 (1986); *City of Oklahoma v. Tuttle*, 471 U.S. 808, 820 (1985)). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Com'rs. v. Brown*, 520 U.S. 397, 404 (1997).

To impose liability, the alleged policy must be a "policy statement, ordinance, regulation or decision officially adopted and promulgated" by the public entity's officers. *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (internal quotation marks and

citation omitted). "If a violation cannot be characterized as official policy, then [a municipality may] still be held liable if the practice is so permanent and well-settled as to constitute a custom or usage with the force of law." *Id.* (internal quotation marks and citations omitted). A custom has been interpreted to mean "an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157,1177 (10th Cir. 2003) (citation omitted).

Plaintiff has not identified a PHP custom or policy that resulted in a violation of his constitutional rights. In fact, Plaintiff concedes that he has not done so. In his response to the Motion, he states that he "is not aware of any policy or proceedure (sic) in which (PHP) practices other than that they appear to be the gate keepers with respect to whether a specific treatment is approved or denied." *Response* [#29] at 1-2.[3] Plaintiff makes the same allegation in the complaint. *Complaint* [#3] at 4. These allegations regarding PHP are not an adequate basis for liability under § 1983. Therefore, the claim against PHP should be dismissed.

## C. Personal Participation

Defendant Want moves to dismiss the claim against him because Plaintiff has failed to state that Want personally participated in the alleged constitutional violation. *Motion* [#24 at 11-12. When a defendant is sued in his individual capacity, the complaint must allege

---

[3] A medical official who "is solely [serving] as a gatekeeper for other medical personnel capable of treating the condition may be liable under the deliberate indifference standard if he delays or refuses to fulfill that gatekeeper role." *Sealock*, 218 F.3d at 1211. Since I find that Defendants were not deliberately indifferent to Plaintiff's medical care, PHP is not liable under a "gatekeeper" theory.

facts that show the defendant *personally participated* in the alleged violation. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (emphasis added). Respondeat superior is not within the purview of 42 U.S.C. § 1983. *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983). Therefore, the Tenth Circuit has held that a supervisor cannot be held liable for his employees' actions based solely on his supervisory position. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). That is, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" *Serna*, 455 F.3d at 1151 (citing *Jenkins*, 81 F.3d at 994-95). Further, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation. *Id.* (quoting *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006)).

To establish supervisory liability in a § 1983 action, the plaintiff must first show that "the supervisor's subordinates violated the Constitution." *Id.* Second, the plaintiff "must show an 'affirmative link' between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Id.* In *Serna*, the Tenth Circuit held that:

> In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior. Because 'mere negligence' is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with 'deliberate indifference' that a constitutional violation would occur. *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997); *see also Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) ("Liability . . . cannot be based upon simple negligence.").

*Id.* at 1151-52.

The complaint alleges that Defendant Want is liable because he is the CEO of PHP and "has a duty to ensure that the Plaintiff receives adequate medical care and treatment (approval of surgery) under constitutional law." *Complaint* [#3] at 2. Plaintiff essentially alleges that Want is liable because of his supervisory position. Plaintiff has failed to assert any facts to indicate that Defendant Want personally participated in the alleged Eighth Amendment violation. Plaintiff does not allege that Defendant Want participated in the decision to deny Plaintiff knee surgery or that Defendant Want was even aware of Plaintiff's medical condition. Plaintiff has not alleged an "affirmative link" between Defendant Want's conduct as a supervisor and the constitutional depravation. *Serna*, 455 F.3d at 1151. Therefore, the claims against Defendant Want should be dismissed.[4]

### IV. Conclusion

As set forth above, I RECOMMEND that Defendants' Motion to Dismiss be **GRANTED**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v.*

---

[4] In his complaint, Plaintiff seeks the appointment of counsel, *Complaint* [#3] at 5, and mentions the issue again in his response to the motion to dismiss *Reply* [#29] at 2. The Court previously denied Plaintiff's Motion to Appoint Counsel. [#27]. For the reasons stated in that Order, Plaintiff's request for counsel is denied.

*Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  September 23, 2009

                                      BY THE COURT:

                                      s/ Kristen L. Mix
                                      Kristen L. Mix
                                      United States Magistrate Judge